UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

YOVANY PADILLA

    VS.

PNC BANK, NATIONAL ASSOCIATION

<u>COMPLAINT</u>

Plaintiff complains of Defendant as follows:

1.    Plaintiff, Yovany Padilla, is an individual residing at 132-134 Hendricks Street,  Unit 1, Central Falls, Rhode Island. A portion of this property is also located in Lincoln, Rhode Island.

2.    Defendant, PNC Bank, National Association ("PNC") is a National Bank.

3.    On or about August 20, 2003, Plaintiff delivered a mortgage to National City Mortgage Co.

4.    On or about August 20, 2003, Plaintiff  executed a promissory note payable to National City Mortgage Co. in the amount of $246,137.00.

5.    This Court has diversity jurisdiction as the amount in controversy is greater than $75,000.00, the Plaintiff is a citizen of the State of Rhode Island and the Defendant is a citizen or incorporated entities of different states.

277e5e6c7de82526

6.      The Plaintiff's mortgage was never assigned to PNC, which however claimed to be the owner of the Plaintiff's mortgage despite the fact that it had never been assigned the mortgage.

7.      PNC made demand upon Plaintiff for the full payment of all sums past due under the Note in 2015 and claims to have accelerated the note and the mortgage.

8.      PNC, through its attorney, Harmon Law Offices, P.C. ("Harmon") sent the Plaintiff a Notice of Sale, pursuant to R.I.G.L §34-27-4 and   scheduled a foreclosure sale for January 19, 2016.

9.      The advertising in the Pawtucket Times for this purported sale did not identify the tax Plat and Lot for the portion of the property located in Lincoln, Rhode Island.

10.      Plaintiff's mortgage is an FHA mortgage as indicated by the attached Exhibit A.

11.      The provisions of the mortgage in relation to declaration of default and acceleration were not  complied with by the owner of the note and mortgage. Before any alleged acceleration of the loan was declared, the Lender, or its assignee, was required to comply with the terms of the mortgage.

12.     Paragraph 9 of the Plaintiff's Mortgage did not authorize acceleration or foreclosure if not permitted by the Secretary of the Secretary of Housing and Urban Development.

13.     These regulations provide that the mortgagee must have a face to face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

14.     No such face to face meeting occurred nor was attempted nor scheduled.

15.      Thus this regulation was not complied with by any mortgagee before an alleged acceleration of the loan was declared.

16.     In order to accelerate and exercise the statutory power of sale, the mortgagee was required to comply with 24 CFR §203.604., which provides:

> 203.604
> Contact with the mortgagor.
> (a) [Reserved]
> (b) **The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.**
> ( **emphasis added)** If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant

to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.

(c) A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the
mortgagor at the mortgaged property, unless the mortgaged property is more than,200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

(e) (1) For mortgages insured pursuant to section 248 of the National Housing Act, the provisions of paragraphs (b), (c) and (d) of this section are applicable, except that a face-to-face meeting with the mortgagor is required, and a reasonable effort to arrange such a meeting shall include at least one trip to see the mortgagor at the mortgaged property, notwithstanding that such property is more than 200 miles from the mortgagee, its servicer, or a branch office of either. In addition, the mortgagee must document that it has made at least one telephone call to the mortgagor for the purpose of trying to arrange a face-to-face interview. The mortgagee may appoint an agent to perform its responsibilities under this paragraph.

(2) The mortgagee must also:

(i) Inform the mortgagor that HUD will make information regarding the status and payment history of the mortgagor's loan available to local credit bureaus and prospective creditors;

(ii) Inform the mortgagor of other available assistance, if any;

4

(iii) Inform the mortgagor of the names and addresses of HUD officials to whom further communications may be addressed.

17.     Specifically the provisions in paragraph 9 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

18.     Plaintiff's mortgage incorporated the HUD regulations, which required a face to face meeting before declaration of default and acceleration.

18.     Defendant did not comply with the terms of the mortgage to exercise the statutory power of sale as indicated above.

19.     Plaintiff was not provided the opportunity to have a face to face meeting with PNC.

20.     PNC  has offices within 200 miles of Plaintiff's home, including four locations in New York City.

21.     No fact to face meeting was scheduled for Plaintiff by PNC or any loan servicer or any owner of this mortgage note.

22.     No default letter was sent to Plaintiff after a face to face meeting with PNC  had occurred or which had been scheduled by PNC and had been rejected by Plaintiff.

23.     PNC never made a visit to Plaintiff's home to solicit him for a  face to face meeting with a representative of PNC  or any other entity acting on its behalf.

24.     PNC has never sent Plaintiff a default notice or acceleration notice after he had been provided a face to face meeting. As a result, PNC could not exercise the statutory power of sale.

25.     Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on Plaintiff's mortgage.

26.     The HUD Regulations, which were incorporated into the terms of the mortgage also required, prior to declaration of any default or acceleration of the note,  that the mortgagor be provided information on all loss mitigation options.

27.     PNC was required to offer and communicate with the Plaintiff regarding the loss mitigation options indicated in the Regulations, which were the following:

a.     Deeds in lieu of foreclosure
b.     preforclosure sales
c.     assumptions
d.     special forebearance
e.     recasting of mortgages
f.     partial claims


28.     These requirements are located in the Code of Federal regulations, which provide:

 **203.605 Loss mitigation performance.**

**(a)***Duty to mitigate.* Before four full monthly installments due on
the mortgage have become unpaid, the mortgagee **shall** evaluate on a monthly

basis all of the loss mitigation techniques provided at § 203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. Documentation must be maintained for the initial and all subsequent evaluations and resulting loss mitigation actions. Should a claim for mortgage insurance benefits later be filed, the mortgagee shall maintain this documentation in the claim review file under the requirements of § 203.365(c).

**(b)***Assessment of mortgagee's loss mitigation performance.*

**(1)** HUD will measure and advise mortgagees of their loss mitigation performance through the Tier Ranking System (TRS). Under the TRS, HUD will analyze each mortgagee's loss mitigation efforts portfolio-wide on a quarterly basis, based on 12 months of performance, by computing ratios involving loss mitigation attempts, defaults, and claims. Based on the ratios, HUD will group mortgagees in four tiers (Tiers 1, 2, 3, and 4), with Tier 1 representing the highest or best ranking mortgagees and Tier 4 representing the lowest or least satisfactory ranking mortgagees. The precise methodology for calculating the TRS ratios and for determining the tier stratification (or cutoff points) will be provided through FEDERAL REGISTER notice. Notice of future TRS methodology or stratification changes will be published in the FEDERAL REGISTER and will provide a 30-day public comment period.

**(2)** Before HUD issues each quarterly TRS notice, HUD will review the number of claims paid to the mortgagee. If HUD determines that the lender's low TRS score is the result of a small number of defaults or a small number of foreclosure claims, or both, as defined by notice, HUD may determine not to designate the mortgagee as Tier 3 or Tier 4, and the mortgagee will remain unranked.

**(3)** Within 30 calendar days after the date of the TRS notice, a mortgagee that scored in Tier 4 may appeal its ranking to the Deputy Assistant Secretary for Single Family or the Deputy Assistant Secretary's designee and request an informal HUD conference. The only basis for appeal by the Tier 4 mortgagee is disagreement with the data used by HUD to calculate the mortgagee's ranking. If HUD determines that the mortgagee's Tier 4 ranking was based on incorrect or incomplete data, the mortgagee's performance will be recalculated and the mortgagee will receive a corrected tier ranking score.

**(c)***Assessment of civil money penalty.* A mortgagee that is found to have failed to engage in loss mitigation as required under paragraph (a) of this section shall be liable for a civil money penalty as provided in § 30.35(c) of this title.

29.     Prior to transmitting a default notice or accelerating the mortgage

loan, PNC  did not provide to the Plaintiff or discuss with the Plaintiff any of the

loss mitigation options pursuant to24 CFR 203.51, which provides:

**§ 203.501 Loss mitigation.**

Mortgagees must consider the comparative effects of their elective servicing
actions, and must take those appropriate actions which can reasonably be expected
to generate the smallest financial loss to the Department. Such actions include, but
are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure
sales under § 203.370, partial claims under § 203.414, assumptions under §
203.512, special forbearance under §§ 203.471 and 203.614, and recasting
of mortgages under § 203.616. HUD may prescribe conditions and requirements
for the appropriate use of these loss mitigation actions, concerning such matters
as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and
evaluation of the mortgagor's income, credit and property.

30.     On January 19, 2016, despite the failure to comply with the terms of

the mortgage, Defendant, through its attorney, Harmon Law Offices, P.C. claims to

have conducted a foreclosure sale.

31.     At this sale the Defendant claims to have purchased the property

pursuant to  two purported Foreclosure Deeds, which were recorded in the Land

Evidence Records of the City of Central Falls on April 1, 2016 in Book 1991 Page

97 and on April 1, 2016 in the Land Evidence Records of the Town of Lincoln in

Book 887 Page 230.

32.     A copy of the purported  foreclosure deeds is attached as Exhibit B.

# COUNT I

**BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE BY NOT COMPLYING WITH THE REGULATIONS OF THE SECERTARY OF HOUSING AND URBAN DEVELOPMENT WHICH APPLY TO PLAINTIFF'S FHA MORTGAGE**

33.     Paragraphs 1-32 are incorporated by reference.

34.     Plaintiff's FHA mortgage incorporated the HUD regulations, which required a face to face meeting and advising Plaintiff of all loss mitigation options before sending the Plaintiff a default and acceleration notice.

35.     There was no compliance with the HUD Regulations to exercise the statutory power of sale as indicated above.

36.     PNC did not comply with the HUD regulations and did not thus provide Plaintiff the opportunity to have a face to face meeting, prior to declaring default and accelerating the mortgage loan.

37.     PNC did not comply with the HUD regulations and did not provide the Plaintiff with all loss mitigation options, prior to its purported declaration of default and acceleration of the mortgage loan.

38.     No default letter or acceleration letter was sent to Plaintiff after a face to face meeting and after PNC had explained to Plaintiff all loss mitigation options available to the Plaintiff as required by the HUD regulations.

39.     Due to this failure to comply with the HUD Regulations, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's mortgage. tiff.

40.     As a result of the improper and invalid attempt to exercise of the statutory power of sale and a purported  foreclosure sale due to the failure to comply with the HUD regulations, Plaintiff's  mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other improper charges.

41.     Plaintiff has incurred damages in that PNC has sought to evict his tenants at the property, causing him a loss of income from tenants.


42.     Plaintiff lives in the property with his wife and minor children. He has also incurred emotional injuries and damages due to the improper alleged foreclosure  on his home without complying with the terms of the mortgage.

43.     Due to the foreclosure and subsequent eviction actions against him, he has been worried about being evicted from his home and is concerned for his family's health and welfare. This has caused him to lose sleep and suffer emotional distress due to the actions of the Defendant.

44.     Plaintiff has  hired  an attorney, in regard to the improper action of PNC, which sent him a Notice of Foreclosure sale and  sought to evict him, after

having claimed to have conducted a sale without having complied with the HUD regulations and the terms of the mortgage.

45.    Plaintiff has incurred legal fees for the prosecution of this action as a result of the breach of contract by  PNC. The actions of PNC were a breach of the covenant of good faith and dealing and were willful, wanton and reckless, warranting the imposition of punitive damages.

46.    Pursuant to the provisions of R.I.G.L §9-1-45, Plaintiff is entitled to attorney fees for this breach of contract.

47.    There was no justiciable basis in law or fact for the exercise of the statutory power of sale without complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands Judgment against PNC for compensatory damages and punitive damages arising from the breach of contract and covenant of good faith and dealing by PNC along with legal fees and costs and  legal fees pursuant to R.I.G.L.§ 9-1-45  for breach of contract.

YOVANY PADILLA
By his Attorney

March 21, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II

### CLAIM FOR  INJUNCTIVE  RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION

48.    Paragraphs 1-47 are incorporated by reference.

49.    Plaintiff will be irreparably harmed if Defendant's improper exercise of the statutory power of sale without complying with the HUD regulations and is not voided and Defendant is allowed to obtain title to Plaintiff's home and is allowed to evict Plaintiff from his home despite the improper foreclosure sale of the Plaintiff's home.

50.   Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

51.    The failure of the Defendant to comply with the HUD regulations  renders void the alleged foreclosure by Statutory Power of Sale, without having the contractual ability.

52.    Plaintiff lives in this property, as his residence with his wife and two minor children.

53.    These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which

hardship is greater than any hardship, which may be claimed by defendant.

54.   Such relief sought by Plaintiff will not disserve the public interest if imposed.

55.   Since there has been no compliance with the HUD regulations requiring a Face to Face meeting and an explanation of all loss mitigation options as a prerequisite to the declaration of default, any alleged foreclosure is void

56.   Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in not complying with the provisions of the HUD regulations.

WHEREFORE, Plaintiff demands that this Court:

a.  Declare that all actions of the Defendant in attempting to foreclose on the Plaintiff's property, without complying with the provisions of the HUD regulations incorporated into the terms of the mortgage are void.

b.  Declare that the Plaintiff is entitled to a face to face meeting and explanation of all loss mitigation options, prior to the declaration of default and acceleration of the mortgage loan.

c.  Grant a Preliminary Injunction Restraining and Enjoining  PNC and any other entity acting on its behalf from taking any action to evict the Plaintiff from his home at 132-134 Hendricks Street, Central Falls and Lincoln Rhode Island pending a hearing on a Permanent Injunction

d.  Grant a Temporary Restraining Order and Permanent and Mandatory Injunction  PNC and any other entity acting on its behalf.to comply with the HUD Regulations and the terms of the mortgage and provide the Plaintiff a face to face meeting and provide all loss mitigation options before attempting to declare the Plaintiff's mortgage loan in  default or accelerate the mortgage loan.

YOVANY PADILLA
By his Attorney
/s/ John B. Ennis

March 21, 2018

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT III
## DECLARATORY JUDGMENT

57.    Paragraphs 1-56 are incorporated by reference.

58.    This Court has jurisdiction to issue Declaratory Judgments pursuant to
the Declaratory Judgment Act, 28 U.S.C §2201.

59.    The failure of the Defendant to comply with the HUD regulations
incorporated into the terms of the Plaintiff's mortgage rendered the purported
foreclosure void.

60.    As a result the purported deeds recorded in the City of Central Falls and
the Town of Lincoln should be vacated and rescinded.

61.    This Court has the power to declare that the aforementioned deeds to be
void and without any effect.

62.    Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands that this Court issue a Declaratory Judgment
declaring that the purported Foreclosure Deeds, which were recorded in the Land

14

Evidence Records of the City of Central Falls on April 1, 2016 in Book 1991 Page

97 and on April 1, 2016 in the Land Evidence Records of the Town of Lincoln in

Book 887 Page 230 are null and void and to grant all other just and proper relief,

including legal fees and costs.

<div style="margin-left: 40%;">

YOVANY PADILLA
By his Attorney

</div>

March 21, 2018

<div style="margin-left: 40%;">

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

</div>

Plaintiff demands a Trial by Jury