UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YOVANY PADILLA,<br><br>   Plaintiff,<br><br>v.<br><br>PNC BANK, NATIONAL ASSOCIATION,<br><br>   Defendant | )<br>)<br>)<br>)<br>)<br>) C.A. No. 1:18-CV-00131-MSM-PAS<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter comes before the Court on the defendant, PNC Bank, National Association's ("PNC"), Motion for Summary Judgment and the Objection of the plaintiff, Yovany Padilla. (ECF Nos. 18 & 25.) The matter turns upon whether a district court can hold that the plaintiff mortgagor, who failed to file a mandatory Statement of Intention to indicate his intent with respect to secured property in a now-closed Chapter 7 bankruptcy case, indeed surrendered the property to the creditor as a matter of law.

The Court heard oral argument on the Motion on January 7, 2020. For the reasons that follow, PNC's Motion for Summary Judgment is DENIED.

1

# I. BACKGROUND

The plaintiff, Yovany Padilla, purchased a home at 132-134 Hendricks Street, Central Falls, Rhode Island ("the Property"), in 2003. (ECF No. 25.) To finance the Property, Mr. Padilla granted a mortgage to National City Mortgage Co.[1] and executed a promissory note payable to that entity in the amount of $246,137.00. Because it was a Federal Housing Administration mortgage, Mr. Padilla's mortgage incorporated the Department of Housing and Urban Development ("HUD") regulations. (ECF No. 1 ¶¶ 10, 18.)

On July 10, 2010, after having fallen behind on his mortgage payments, Mr. Padilla filed a voluntary petition for Chapter 13 Bankruptcy in the United States Bankruptcy Court. (ECF Nos. 20 & 25-2.) Mr. Padilla filed a plan seeking a modification of the mortgage debt with the Bankruptcy Court during the pendency of his Chapter 13 petition. (ECF No. 20.) On April 12, 2012, he voluntarily converted his petition to a Chapter 7 bankruptcy case. *Id.* On July 20, 2012, the Bankruptcy Court issued an order discharging the Chapter 7 Trustee and closing that case due to Mr. Padilla's lack of assets. *Id.* Mr. Padilla did not have any net equity in the Property or own any other assets of value. *Id.*

During the pendency of the Chapter 7 Bankruptcy matter, Mr. Padilla did not file a Statement of Intention under 11 U.S.C. § 521(a)(2), setting forth whether he

---

[1] The defendant, PNC, asserts it is a successor in interest to National City Mortgage Co.

intended to surrender the Property, reaffirm his mortgage, or redeem the Property.[2] There is no indication that the trustee or any creditor moved in the Bankruptcy Court to compel Mr. Padilla to file such a Statement. *Id.* Mr. Padilla states, by way of affidavit, that during his bankruptcy matter no creditor provided him with a reaffirmation agreement. (ECF No. 25-2 ¶ 28.)

---

[2] A Statement of Intention manifests a Chapter 7 debtor's intent with respect to property that is collateral for a secured debt. The language of 11 U.S.C. § 521(a)(2) demonstrates the filing of a Statement of Intention is mandatory:

> (a) The debtor shall ...
>
> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
>
>> (A) ... file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to **reaffirm debts secured by such property**; and
>>
>> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, **perform his intention with respect to such property**, as specified by subparagraph (A) of this paragraph;
>>
>> except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)....

(Emphasis added.)

*See also* Fed. R. Bankr. P. 1007(b)(2) ("An individual debtor in a chapter 7 case **shall** file a statement of intention as required by § 521(a) of the Code [11 USCS § 521(a)], prepared as prescribed by the appropriate Official Form. A copy of the statement of intention shall be served on the trustee and the creditors named in the statement on or before the filing of the statement.") (emphasis added).

Several months after the Bankruptcy Court's discharge order, on or about November 1, 2012, PNC sent, by way of foreclosure counsel, two letters via certified mail to Mr. Padilla, advising him that, due to his default, the promissory note had been accelerated. (ECF No. 20 at 15-18.)

On or about January 19, 2016, PNC conducted a foreclosure sale and purchased the Property. (ECF No. 1 ¶¶ 30-32.) PNC subsequently sought to evict Mr. Padilla through an action in Rhode Island state district court. (ECF No. 25-2 ¶ 48.)

On March 21, 2018, Mr. Padilla filed the instant suit against PNC in this Court. Count I alleges breach of contract for PNC's alleged failure to comply with HUD regulations prior to their acceleration of the mortgage loan. Most notably, Mr. Padilla cites PNC's failure to have a face-to-face meeting with him as is required by 24 C.F.R. § 203.604. Mr. Padilla further seeks injunctive relief (Count II), to enjoin PNC from taking any action to evict him from the Property and to require PNC to comply with HUD regulations and the terms of the mortgage. Finally, Mr. Padilla seeks a declaratory judgment (Count III). He seeks this Court's declaration that the foreclosure deeds are null and void as a result of PNC's alleged failure to comply with HUD regulations and the terms of the mortgage. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

PNC has filed a Motion for Summary Judgment under Fed R. Civ. P. 56 asserting that Mr. Padilla's claim for breach of contract and failure to comply with the terms of the mortgage (specifically, the failure to attempt a face-to-face meeting)

4

fails as a matter of law because Mr. Padilla "effectively surrendered" the Property to PNC as a result of the bankruptcy proceedings and, as such, cannot contest a foreclosure action of the Property. (ECF Nos. 18, 19.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d

5

454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper." *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991).

### III. DISCUSSION

The Court first considers an issue that counsel for PNC raised at oral argument: that PNC was not required to attempt a face-to-face meeting with Mr. Padilla because he did not reside at the Property. *See* 24 C.F.R. § 203.604(c)(1) (providing that a face-to-face meeting is not required if the "mortgagor does not reside in the mortgaged property"). Counsel for Mr. Padilla countered that Mr. Padilla did in fact reside in the Property. Because there is a genuine issue as to this material fact, and no admissible evidence presented to the Court establishing the whereabouts of Mr. Padilla's residency during the relevant time, the Court cannot grant summary judgment on this basis. *See* Fed. R. Civ. P. 56.

Turning to the remainder of PNC's Motion, PNC argues that Mr. Padilla's claim for breach of contract and failure to comply with the terms of the mortgage fails as a matter of law because Mr. Padilla "effectively surrendered" the Property when he did not reaffirm the debt or redeem the Property during the bankruptcy proceedings. PNC asserts that, by surrendering the Property to the bankruptcy trustee, who PNC asserts then abandoned it, Mr. Padilla ultimately surrendered the

Property to the creditor. Therefore, PNC argues, Mr. Padilla lost his right to contest the foreclosure action because the meaning of "surrender" (a term used but not expressly defined in the Bankruptcy Code) has been interpreted as the relinquishment of all rights in a property. *See, e.g., In re White*, 487 F.3d 199, 204 (4th Cir. 2007) ("Surrender means the relinquishment of all rights in property, including the possessory right."); *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006) ("[T]he most sensible connotation of 'surrender' ... is that the debtor agreed ... to cede his possessory rights in the collateral.").

PNC is correct that a debtor in Chapter 7 bankruptcy is required under the Bankruptcy Code, 11 U.S.C. § 521(a)(2), to file a Statement of Intention with the bankruptcy court and affirmatively declare what the debtor intends to do with property that secures a debt and is further required to comply with that stated intention. Section 521(a)(2) provides three debtor options: (1) reaffirm the debt by reaching an agreement to repay the debt under renegotiated terms; (2) redeem the collateral by paying the creditor the amount of the secured claim or the fair market value of the collateral, whichever is less; or (3) surrender the collateral. *In re Pratt*, 462 F.3d at 17-18 (holding that § 521(a)(2) "contemplates three distinct debtor prerogatives: reaffirmation, redemption, or surrender").

It is undisputed that Mr. Padilla did not file the required Statement of Intention during the pendency of his Chapter 7 bankruptcy case and no other evidence of his intent has been presented to this Court. But PNC asks that this Court infer a surrender from which a conclusion would follow that Mr. Padilla has

7

"relinquished his rights and claims to the [P]roperty, including claims as to the legal sufficiency of the foreclosure." (ECF No. 19 at 7.) Most of the cases PNC has relied upon to support this argument are readily distinguishable, however, because in those cases the debtor filed a Statement of Intention. *See In re Failla*, 838 F.3d 1170, 1173 (11th Cir. 2016) (debtors filed a Statement of Intention to indicate they would surrender the collateral); *In re Pratt*, 462 F.3d at 16 (same); *In re Elowitz*, 550 B.R. 603, 604 (Bankr. S.D. Fla. 2016) (same); *In re Newkirk*, 297 B.R. 457, 461 (Bankr. W.D.N.C. 2002) (debtors elected to reaffirm debt); *In re Lair*, 235 B.R. 1, 5 (Bankr. M.D. La. 1999) (same).

PNC does cite one case in which the debtor did not file a Statement of Intention: *In re Woide*, 730 Fed. App'x 731 (11th Cir. 2018). But there, because the debtors had not filed a Statement of Intention after they converted their Chapter 13 case into a Chapter 7, the creditor moved to have the bankruptcy court reopen the debtors' bankruptcy case and to compel surrender of the property. This was not an example of a district court inferring that a surrender occurred in a closed bankruptcy case. *See id.* at 735. Furthermore, when the *Woide* debtors were in Chapter 13 bankruptcy they had filed a schedule indicating their intent to surrender their home.[3] *Id.* at 735-36.

In contrast, Mr. Padilla filed a plan intending to retain the property and modify

---

[3] "In chapter 13, a debtor owning encumbered property need not file a statement of intention, but instead must file a chapter 13 plan which accomplishes much the same thing. Bankruptcy Code § 1325(a)(5) is the practical equivalent of § 521(a)(2)." *In re Thompson*, 581 B.R. 1, 2-3 (Bankr. D. Mass. 2018).

the mortgage loan while his case was a Chapter 13 bankruptcy. Thus, an inference is not merely unwarranted because of Mr. Padilla's failure to file a Statement of Intention, it may be inaccurate as it is contrary to his Chapter 13 filing.

The preliminary question for this Court is whether, under the facts of this case, the Property was surrendered. That is, whether "effective[] surrender[]" of the Property is the result of Mr. Padilla's failure to file a Statement of Intention clearly indicating his intent with the Property or to carry out one of the three options under § 521(a)(2). PNC makes that leap, seeking from this Court an inference of surrender, but does so without authority. A review of the relevant statutory framework demonstrates that this Court should not make such an inference.

Prior to the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCA"), the Bankruptcy Code provided no explicit sanction for failure to comply with the requirement of filing a Statement of Intention and therefore courts fashioned their own remedies. *See In re Clafin*, 249 B.R. 840, 848 (B.A.P. 1st Cir. 2000); *In re Rathbun*, 275 B.R. 434, 438, 441-42 (Bankr. D.R.I. 2001). Such sanctions could be an order in the bankruptcy court compelling the filing of the Statement of Intention, *In re Burr*, 160 F.3d 843, 849 (1st Cir. 1998), a dismissal of the bankruptcy case, *In re Donnell*, 234 B.R. 567, 570 n.3 (Bankr. D.N.H. 1999), or relief from the automatic stay for the relevant creditor, *In re Clafin*, 249 B.R. at 848.

The passage of BAPCA did provide specific statutory sanctions for failure to comply, but they only pertain to debts secured by personal property. *See* § 521(a)(6) (providing for self-activating stay relief for personal property when an individual

Chapter 7 debtor fails to reaffirm or redeem within 45 days of the first meeting of creditors); § 362(h) (providing, with respect to personal property collateral, that a debtor's failure to reaffirm, redeem, or surrender within the time required by § 521(a)(2)(A) and (B) automatically terminates the stay and takes the property out of the bankruptcy estate).

Because the post-BAPCA Bankruptcy Code remains silent on the sanction for failure to file a Statement of Intention when the debt is secured by real property, the appropriate remedy would be those judicially created pre-BAPCA remedies described above. Here, neither the trustee nor PNC took any action to seek a possible remedy in Bankruptcy Court for Mr. Padilla's failure to declare his intentions pursuant to § 521(a)(2). Neither filed a motion to compel the filing of a Statement of Intention. (ECF No. 20.) *See In re Silvestri*, 2004 WL 2610032, *1 (Bankr. D.R.I. June 14, 2004) (granting creditor's motion to compel debtor to file Statement of Intention).

Now, more than seven years after the closure of the bankruptcy action, PNC seeks to have a district court rule that a surrender occurred in a case devoid of a Statement of Intention. But PNC has not identified, and nor has the Court discovered, any authorities which provide that a failure to file a Statement of Intention operates to "effectively surrender[]" collateral.

The factual record before the Court at this summary judgment stage also does not support the conclusion, as a matter of law, that Mr. Padilla intended to surrender the Property. Section 521(a)(2)(A) is primarily a notice statute and the Statement of Intention is the vehicle to provide notice of the debtor's intent. *See* 4 *Collier on*

*Bankruptcy*, ¶ 521.14 (16th ed. 2019). PNC asks that this Court divine Mr. Padilla's intent among the options available under § 521(a)(2) and select surrender. Generally, "where the debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: 'surrender' the collateral." *In re Pratt*, 462 F.3d at 18. In that event, the inference is a fair one that the debtor has at least implicitly chosen the only remaining option. Here, however, the record does not contain any evidence suggesting that Mr. Padilla decided against reaffirmation or that he ever attempted to negotiate a reaffirmation agreement. In fact, Mr. Padilla stated in his affidavit that PNC did not discuss a reaffirmation agreement with him. (ECF No. 25-2 ¶ 28.)

Without undisputed evidence as to his intent, this Court cannot find that, by default, Mr. Padilla surrendered the Property. The issue of surrender is a factual one that is in dispute and is material to the determination of this case.

Because it cannot be held as a matter of law that Mr. Padilla surrendered the Property, the Court need not proceed further to determine whether a debtor who surrenders property can later contest a foreclosure.

## IV. CONCLUSION

For the foregoing reasons, PNC's Motion for Summary Judgment (ECF No. 18) is DENIED.

IT IS SO ORDERED.

/s/ Mary S. McElroy
Mary S. McElroy
United States District Judge
January 28, 2020